IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CARRIE ANGLIM, | |
| Plaintiff, | 8:21-CV-171 |
| vs. | |
| SHARP MEDICAL STAFFING, LLC, | MEMORANDUM AND ORDER |
| Defendant. | |

## I.   INTRODUCTION

Carrie Anglim sued Sharp Medical Staffing, LLC, ("Sharp") for violating the notice provision of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") and for Sharp's "failure to enroll" her in its COBRA group health plan. Before the Court is Sharp's Motion for Summary Judgment.[1] Filing 25. For the reasons stated herein, the Court grants Sharp's motion.

## II.   BACKGROUND

Anglim worked for Sharp from January 2020 until her termination in March 2020. Filing 1-1 at 3. As an employer subject to COBRA requirements, Sharp was to provide Anglim notice that she could initiate or continue healthcare coverage through COBRA. *See* 29 U.S.C. §

---

[1] Sharp had previously filed a Motion for Judgment on the Pleadings, Filing 19, which the Court had converted into the present motion for summary judgment in its October 7, 2021 Order. Filing 24.

1

1166(a)(1). However, Anglim did not receive a proper COBRA notice[2] until November 2020. Filing 1-1 at 3.

Anglim avers that, before she received a proper COBRA notice, she called a person named Ashley Steckly[3] in April 2020. Steckly told Anglim to pay six months of COBRA premium payments in advance and to not contact the insurance company providing the COBRA coverage directly. Filing 27 at 1. Anglim sent a $3,600 check to Sharp for her premium payments, which Sharp never cashed and denies receiving. Filing 26 at 2; Filing 8 at 2. When Anglim learned that her check had not been cashed, she called Steckly and Sharp's president, Rebecca Jones, numerous times in April and May 2020. Filing 27 at 3–4. Steckly and Jones did not return these calls. Filing 27 at 3–4. Because of her issues with Sharp, Anglim reached out to Cynthia Smith, an employee of the Department of Labor, for advice. Filing 27 at 4. In response, Smith sent Anglim a COBRA notice, dated March 31, 2020, which Smith stated she received from Sharp. Filing 27 at 4. According to Smith, Sharp told her that it had sent Anglim this COBRA notice. Filing 27 at 4. Smith claims she never received this notice. Filing 27 at 4.

Once Anglim received the COBRA notice in November, she called Smith about what further action she should take. Filing 27 at 1. Smith advised Anglim to wait until Sharp cashed the $3,600 check. Filing 27 at 1–2. Anglim, however, sent another $1,800 check to Sharp along with the paperwork to enroll in COBRA coverage. Filing 1-1 at 4; Filing 27 at 1–2. Sharp claims it never received this second check or Anglim's enrollment paperwork. Filing 8 at 2. At around this time, Smith told Anglim not to send any more checks to Sharp. Filing 27 at 2.

---

[2] Sharp refers to the November COBRA notice as the "corrected" COBRA notice, Filing 26 at 2, implying that it had sent an "incorrect" COBRA notice prior to November.
[3] Anglim does not explain who Ashley Steckly is or why she called her.

Sharp eventually enrolled Anglim in its COBRA group health plan, effective April 1, 2020, and paid her COBRA premiums through May 31, 2020. Filing 8-2 at 1–2; Filing 8-3 at 1. Discovery Benefits, LLC, Sharp's insurer for its COBRA group health plan, sent a letter to Anglim dated February 9, 2021, showing that Sharp enrolled Anglim in COBRA healthcare coverage and had paid her initial premium payment. Filing 8-2 at 1. The letter further directed Anglim to begin making her premium payments. Filing 8-2 at 1. Anglim claims she never received this letter and that she had never heard of Discovery Benefits until the beginning of this lawsuit. Filing 27 at 2–3.

Anglim's COBRA coverage was suspended for failure to pay premiums after May 31, 2020. Filing 8-3 at 1. However, if Anglim pays the monthly premiums she owes, her COBRA coverage will be retroactively reinstated. Filing 8-2 at 7–8; Filing 8-3 at 1–2. Once her COBRA coverage is reinstated, she may resubmit any claims that were denied for failure to pay premiums. Filing 8-2 at 7–8; Filing 8-3 at 1–2.

Anglim sued Sharp in Nebraska state court on March 22, 2021. Filing 1-1 at 3. Anglim's complaint sought damages for Sharp's alleged failure to provide notice of COBRA eligibility under 29 U.S.C. § 1132 and for Sharp's "failure to enroll" her in its COBRA group health plan. Filing 1-1 at 3-4; Filing 27 at 6; Filing 28 at 2–3. According to Anglim, she suffered damages by abstaining from certain medical procedures because she believed she lacked COBRA coverage. Filing 27 at 6. On April 23, 2021, Sharp removed this action to this Court. Filing 1. Sharp filed a Motion for Judgment on the Pleadings, which this Court converted into a motion for summary judgment in its October 7, 2021 Order. Filing 19; Filing 24. As directed, on October 21, 2021, Sharp filed its Motion for Summary Judgment. Filing 25.

## III.  ANALYSIS

### A.  Standard of Review

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs.*,

*Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

### B. The Timeliness of Sharp's COBRA Notice

Sharp contends that it provided Anglim with a timely COBRA notice, and thus her claim for violation of the COBRA notice requirements fails as a matter of law. Filing 26 at 3–4. Sharp points to a final rule jointly issued by the Internal Revenue Service ("IRS") and the Department of Labor ("DOL"), which gave Sharp one year from Anglim's termination to provide her with a COBRA notice. Filing 26 at 3–4. Because Anglim admits in her Complaint that she received a COBRA notice in November 2020, about eight months after Sharp terminated her employment in March 2020, Sharp asserts that its COBRA notice was timely.[4] Filing 26 at 3–4. The Court concludes that Sharp sent a timely COBRA notice and that Anglim's claim for violation of the COBRA notice requirements fails.

"COBRA requires that a group health plan provide, 'at the time of commencement of coverage under the plan, written notice to each covered employee . . . of [his or her COBRA]

---

[4] Anglim attempts to recast her claim as solely one for Sharp's "failure to enroll" her in the COBRA healthcare plan, and thus contends that any argument by Sharp that it provided timely notice is "moot." Filing 28 at 2. However, her Complaint states that "Defendant intentionally violated COBRA (29 CFR 2590) in that Defendant did not give proper notices to Plaintiff." Filing 1-1 at 5; *see also* 29 C.F.R. 2590.606-4 (listing COBRA notice requirements). Thus, it is proper for Sharp to argue that its notice is timely because it addresses a central claim in Anglim's Complaint.

rights.'" *Delcastillo v. Odyssey Res. Mgmt., Inc.*, 431 F.3d 1124, 1129 (8th Cir. 2005) (quoting 29 U.S.C. § 1166(a)(1)). Under COBRA, a sponsoring employer is obligated to offer continuation coverage to employees for up to eighteen months after a "qualifying event," such as employment termination, that results in a loss of group health plan coverage. *See* 29 U.S.C. §§ 1161(a), 1162(2), 1163(2). "When a qualifying event occurs, the plan administrator must give a timely additional notice of the right to elect continuation coverage. *See Delcastillo*, 431 F.3d at 1129 (citing 29 U.S.C. § 1166(a)(4)).

Section 1132 of the Employee Retirement Income Security Act ("ERISA") grants a cause of action to plan beneficiaries against plan administrators who fail to meet COBRA's notice requirements. *See* 29 U.S.C. § 1132(a), (c); *In re Interstate Bakeries Corp.*, 704 F.3d 528, 534 (8th Cir. 2013). A plan administrator who fails to abide by COBRA's notice provision "may in the court's discretion be personally liable to such participant . . . in the amount of up to [$110][5] a day from the date of such failure or refusal." 29 U.S.C. § 1132(c)(1). "The purpose of this statutory penalty is to provide plan administrators with an incentive to comply with the requirements of ERISA and to punish noncompliance." *Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1040 (8th Cir. 2006) (citations omitted).

Ordinarily, DOL regulations require employers who administer COBRA plans to furnish a qualified beneficiary notice of COBRA eligibility within forty-four days of a qualifying event. *See* 29 C.F.R. § 2590.606-4(b)(2). However, on May 4, 2020, the IRS and the DOL jointly issued an emergency rule pursuant to § 553 of the Administrative Procedure Act extending the time for

---

[5] Although the statute states that the penalty is $100 per day, the amount has been adjusted to $110 per day. *See* 29 C.F.R. § 2575.502c–1.

employers to provide COBRA notice.[6] *See* Extension of Certain Timeframes for Employee Benefit Plans, Participants, and Beneficiaries Affected by the COVID-19 Outbreak, 85 Fed. Reg. 26351-01 (May 4, 2020). The rule makes the relief retroactive to March 1, 2020. *Id.* According to the rule, which the agencies further clarified in an Employee Benefits Security Administration ("EBSA") notice, the COBRA notice requirements are disregarded until the earlier of one year after the qualifying event or sixty days after the announced end of the COVID-19 National Emergency. *See id.; Premium Assistance for Cobra Benefits*, 2021-23 I.R.B. 1173 (2021) (explaining the modified notice requirements); *see also* Emp. Benefits Sec. Admin., *EBSA Disaster Relief Notice 2021-01*, U.S. Department of Labor, https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/disaster-relief/ebsa-disaster-relief-notice-2021-01 (last visited Sept. 30, 2021). The COVID-19 National Emergency is ongoing. *See* Notice On the Continuation of the National Emergency Concerning the Coronavirus Disease 2019 (covid-19) Pandemic, 86 Fed. Reg. 11599 (Feb. 24, 2021) (message from the president extending the COVID-19 National Emergency). Thus, the issue is whether Anglim received a COBRA notice one year after her qualifying event, i.e., her termination from employment.

Anglim cannot maintain an action for violations of the COBRA notice provision. Anglim's employment with Sharp ended in March 2020. Filing 1-1 at 3. Accordingly, the IRS and DOL extension of timeframes required Sharp to provide COBRA notice to Anglim sometime in March

---

[6] The emergency rule states that its purpose is to "minimize the possibility of individuals losing benefits because of a failure to comply with certain pre-established timeframes" and that the agencies "recognize that affected group health plans may have difficulty in complying with certain notice obligations." Extension of Certain Timeframes for Employee Benefit Plans, Participants, and Beneficiaries Affected by the COVID-19 Outbreak, 85 Fed. Reg. 26351-01 (May 4, 2020).

2021. However, Anglim admits that she received a COBRA notice in November 2020. Filing 1-1 at 4. Thus, her claim for violations of the COBRA notice requirements fails as a matter of law.

### C. Anglim's "Failure to Enroll" Claim

Although it is not clear from the face of her Complaint, Anglim now argues that she is suing Sharp for failing to process her paperwork, accept her premium payments, and enroll her in Sharp's COBRA group health plan. Filing 27 at 6; Filing 28 at 2–3. In response, Sharp argues that the undisputed facts demonstrate that Sharp did enroll Anglim in COBRA coverage, effective April 1, 2020. Filing 26 at 4. Thus, according to Sharp, Anglim has suffered no damages because she can obtain reimbursement for medical expenses incurred after her employment terminated simply by paying her premiums. Filing 26 at 4. The Court concludes that Sharp cannot maintain a cause of action under the facts of this case because Sharp retroactively enrolled her in its COBRA group health plan, and thus she has not suffered damages cognizable under ERISA.

The civil enforcement provision of ERISA, 29 U.S.C. § 1132, "lists six types of civil actions that may be pursued for violations of the statute." *Knieriem v. Grp. Health Plan, Inc.*, 434 F.3d 1058, 1061 (8th Cir. 2006). Anglim has not identified the provision under which she brings her "failure-to-enroll" claim. The most likely candidate is 29 U.S.C. § 1132(a)(3), which allows an ERISA plan participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."[7] However, recovery under § 1132(a)(3) is limited to "classic" equitable remedies "such as injunctive, restitutionary, or mandamus relief, and does not extend to

---

[7] The other civil actions outlined in § 1132 do not fit within the facts of this case. For example, § 1132(a)(1)(A) relates to violations of ERISA notice requirements, §1132(a)(1)(B) generally concerns plan-eligibility determinations, *see Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989), and § 1132(a)(2) governs the proper management of fund assets, *see LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253 (2008).

compensatory damages." *Knieriem*, 434 F.3d at 1061 (quoting *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 943 (8th Cir. 1999)); *see also Kerr*, 184 F.3d at 943 ("[S]ection 1132(a)(3) is not a limitless free-for-all.").

The Court thus turns to the question of whether Anglim seeks legal or equitable relief. If Anglim's requested relief is legal, rather than equitable, then she cannot maintain an action under § 1132(a)(3). Anglim's Complaint is vague about the relief she requests. The only equitable relief the Court can glean from Anglim's Complaint is her request that Sharp enroll her in its COBRA group health plan. This request, however, is moot. The uncontroverted record establishes that Sharp enrolled Anglim in its group health plan, effective April 1, 2020. *See* Filing 8-2 at 1–2; Filing 8-3 at 1. Once Anglim makes her premium payments, she may submit claims for her medical expenses. Filing 8-2 at 7–8; Filing 8-3 at 1–2. Therefore, Anglim cannot pursue an injunction mandating that Sharp enroll her because she is already enrolled in Sharp's COBRA group health plan.

Anglim also appears to be requesting relief for her medical ailments. Filing 27 at 6. According to Anglim, she did not undergo certain medical procedures because she did not believe she had COBRA healthcare coverage. Filing 27 at 6. As a result, she currently suffers from headaches, nausea, vertigo, and ocular issues. Filing 27 at 6. However, any relief for Anglim's health-related issues is legal rather than equitable in nature. Whether a remedy is legal or equitable depends in large part "on the nature of the relief sought." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 215 (2002). "[S]uits seeking . . . to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Id.* at 210 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918–19 (1988) (Scalia, J.,

9

dissenting)). "Money damages are, of course, the classic form of legal relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993).

Here, the relief for Anglim's health-related issues would be compensatory money damages to pay her medical expenses and for the pain and suffering her medical ailments have caused her. Equitable relief in the form of monetary damages may be available under ERISA, but it depends on "whether the value of the harm done that forms the basis for the damages is measured by the loss to the plaintiff or the gain to the defendant." *Calhoon v. Trans World Airlines, Inc.*, 400 F.3d 593, 596–97 (8th Cir. 2005). Moreover, the money sought must be "specifically identifiable 'as belonging in good conscience to the plaintiff' and '[clearly traceable] to particular funds or property in the defendant's possession.'" *Id.* (quoting *Great-W. Life & Annuity*, 534 U.S. at 213). Here, the value of Anglim's damages arises from the loss she has suffered because of her medical ailments, not from any unlawful gains procured by Sharp. Moreover, Anglim has not pointed to "particular funds" in Sharp's possession that rightfully belong to her. Therefore, any relief related to her health issues is legal and thus unavailable under § 1132(a)(3) of ERISA.

## IV. CONCLUSION

Sharp timely provided Anglim with a COBRA notice, and Anglim cannot maintain a cause of action under ERISA for "failure to enroll." Accordingly,

IT IS ORDERED:

1. Sharp's Motion for Summary Judgment, Filing 25, is granted;

2. Anglim's Complaint, Filing 1-1, is dismissed;

3. The Clerk is directed to terminate Sharp's Motion for Judgment on the Pleadings, Filing 19, because the Court converted it into a motion for summary judgment; and

4. The Court will enter a separate judgment.

Dated this 2nd day of December, 2021.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge

11